# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## AT DAYTON DIVISION

| IN RE: | IN PROCEEDINGS UNDER CHAPTER 13 |
|---|---|
| JEFFERY G. RICHMOND | CASE NO: 17-bk-32838 |
| DEBTOR | JUDGE: GUY R. HUMPHREY |

### MOTION OF U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR GREENPOINT MORTGAGE FUNDING TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR1 FOR RELIEF FROM STAY AND CO-DEBTOR STAY FOR REAL PROPERTY LOCATED AT 2001 Val Vista Court, Dayton, OH 45406

U.S. Bank National Association, as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2007-AR1 (the "Creditor") in this proceeding under Chapter 13 of the Bankruptcy Code, and pursuant to 11 U.S.C. §362(d) of the Bankruptcy Code, Rules 4001, 9013, 1301 and 9014 of the Bankruptcy Rules and Local Bankruptcy Rule 4001-1, respectfully moves this Court for relief from the automatic stay imposed by 11 U.S.C. §362(a) & 1301 in order to proceed with a state court proceeding to foreclose on the property located at 2001 Val Vista Court, Dayton, OH 45406.  The grounds upon which this Motion is made are more fully set forth in the attached Memorandum in Support.

### MEMORANDUM IN SUPPORT

1.     The Court has jurisdiction over this matter under 28 U.S.C. §§157 and 1334.  This is a core proceeding under 28 U.S.C. §157(b)(2).  The venue of this case and this Motion is proper under 28 U.S.C. §§1408 and 1409.

2.     On September 20, 2006, Co-Debtor Brenda Richmond obtained a loan from GreenPoint Mortgage Funding, Inc., in the amount of $82,950.00.  Such loan was evidenced by a

Promissory Note dated September 20, 2006 (the "Note"), a copy of which is attached as Exhibit A.

3.   U.S. Bank National Association, as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2007-AR1 directly or through an agent has possession of the promissory note and held the note at the time of the Movant's Motion for Relief from Stay.  The promissory note has been duly endorsed.

4.   To secure payment of the Note and performance of the other terms contained in it, the Co-Debtor, Brenda Richmond executed a Mortgage dated September 20, 2006 (the "Mortgage").  The Mortgage granted a lien on the real property (the "Property") owned by the Jeffery G. Richmond located at 2001 Val Vista Court, Dayton, OH 45406 and more fully described in the Mortgage.

5.   The lien created by the Mortgage was duly perfected by the recording of the Mortgage in the office of the Montgomery County Recorder on January 23, 2007.  A copy of the Mortgage is attached as Exhibit B.  The lien is the first and best lien on the property.

6.   The Note and Mortgage are currently held by U.S. Bank National Association, as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2007-AR1.

7.   The value of the Property is $47,850.00, per the Montgomery County Auditor.

8.   As of May 9, 2018, there is currently due and owing on the Note, the outstanding balance of $99,318.38, plus interest accruing thereon at the rate of 4.625% per annum from September 1, 2017.

9.   Other parties known to have an interest in the Property are as follows:

   a.   Montgomery County Treasurer, for tax purposes.

      b.  Co-Debtor, Brenda Richmond

10.    The Creditor is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1)

and/or 362(d)(2) for these reason(s):

    a.    Per the Note and Mortgage, payments are applied to the last month due.  Based upon the foregoing, Debtor has failed to make periodic payments to Creditor since December 1, 2017, which unpaid payments are in the aggregate amount of $3,882.60 (minus $0.00 in post-petition suspense) through May 9, 2018.

    b.    Since the Bankruptcy was filed, Debtor should have made 8 post-petition payments but has only made 2 payments.  Therefore, the loan is delinquent 6 post-petition payments.

11.    Creditor has completed the worksheet attached as Exhibit E.

12.    This Motion conforms to the standard form adopted in this District except as follows:

### **Clarification of language in Paragraph 3**

     WHEREFORE, Creditor prays for an Order from the Court granting Creditor relief from

the automatic stay of 11 U.S.C. §362 and 1301 of the Bankruptcy Code to permit Creditor to

proceed under law and for such other and further relief to which the Creditor may be entitled.

           Respectfully Submitted,

           /s/ Chris E. Manolis
           Shapiro, Van Ess, Phillips & Barragate, LLP
           Chris E. Manolis (OH-0076197)
           4805 Montgomery Road, Suite 320
           Norwood, OH 45212
           Phone: (513) 396-8100
           Fax: (847) 627-8805
           Email: cmanolis@logs.com

**Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.**

## **ADDENDUM**

Case number: 17-bk-32838
Debtor: Jeffery G. Richmond

Basis for asserting that "U.S. Bank National Association, as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2007-AR1" has the right to foreclose

Ocwen Loan Servicing, LLC services the underlying mortgage loan and note for the property referenced in this Motion for:
U.S. Bank National Association, as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2007-AR1 (hereinafter, "noteholder") and is entitled to proceed accordingly. Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is dismissed or if the Debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will be conducted in the name of the noteholder. The noteholder has the right to foreclose because (check the applicable below):

\_\_\_   Noteholder is the owner of the note.

_X_   Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent has possession of the promissory note and the promissory note is either made payable to Noteholder or has been duly endorsed.

\_\_\_   Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder directly or through an agent, has possession of the promissory note and will enforce the promissory note as transferee in possession.

\_\_\_   Noteholder is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Noteholder is unable to find the promissory note and will seek to prove the promissory note through the filing of a lost note affidavit.

\_\_\_   Noteholder is the successor trustee and transferee in possession of the security instrument for the referenced loan.

.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 17th day of May, 2018, copies of the foregoing were served by mailing the same by ordinary U.S. Mail, postage prepaid, and/or electronically as permitted by local rule, to the persons listed below.

### <u>Served by Regular U.S. Mail</u>

Jeffery G. Richmond
115 Horace Street
Dayton, OH 45402

Brenda Richmond
2001 Val Vista Court
Dayton, OH 45406

### <u>Electronic Mail Notice List</u>

Thomas M Fesenmyer
Fesenmyer Law Offices, LLC
120 West Second Street
Suite 1212
Dayton, OH 45402

Jeffrey M Kellner
131 North Ludlow Street
Suite 900
Dayton, OH 45402

Office of the US Trustee
170 North High Street
Suite 200
Columbus, OH 43215

/s/ Chris E. Manolis
Shapiro, Van Ess, Phillips & Barragate, LLP
Chris E. Manolis (OH-0076197)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (513) 396-8100
Fax: (847) 627-8805
Email: cmanolis@logs.com

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## DAYTON DIVISION

IN RE:

JEFFERY G. RICHMOND

**Debtor**

IN PROCEEDINGS UNDER CHAPTER 13

CASE NO: 17-bk-32838

JUDGE: GUY R. HUMPHREY

---

## RELIEF FROM STAY/ADEQUATE PROTECTION
## EXHIBIT AND WORKSHEET – REAL ESTATE
## (For use as required by LBR 4001-1(a)(1))

---

Real property address which is the subject of this motion:
2001 Val Vista Court
Dayton, OH 45406

**DEBT/VALUE REPRESENTATIONS:**

| | | |
|---|---|---:|
| Total indebtedness of the debtor(s) at the time of filing the motion for relief from stay (not to be relied upon as a payoff quotation) | $ | 99,318.38 |
| Movant's estimated market value of the real property | $ | 47,850.00 |
| Source of the estimated valuation   Montgomery County Auditor | | |

**STATEMENT OF ARREARAGE:**

| | | |
|---|---|---:|
| (1)  As of petition filing date: | $ | 596.95 |
| Amounts paid after the date of filing to be applied to the prepetition default: | $ | 0.00 |
| (2)  Postpetition: | $ | 3,882.60 |
| (3)  Monthly payment amount: | $ | 647.10 |
| (4)  Date of Last Payment         November 1, 2017 | | |
| (5)  Amount of Last Payment | $ | 646.08 |

# of payments due postpetition          8    (through payment due May 9, 2018)

# of payments received postpetition          2

# of payments in default postpetition          6

| | | |
|---|---|---:|
| Total amount of postpetition payments currently in default: | $ | 3,882.60 |
| + Postpetition late charges | $ | 0.00 |
| + Other charges | $ | 0.00 |

Foreclosure title work          $          0.00

Filing fee                              $  _____ 0.00

Skip trace                              $  _____ 0.00

Document acquisition costs              $  _____ 0.00

Service Process server                  $  _____ 0.00

Escrow Shortage

    Hazard Insurance                    $  _____ 0.00   <u>Dates:</u>

    Taxes                               $  _____ 0.00   <u>Dates:</u>

Appraisal                               $  _____ 0.00

Property Inspection                     $  _____ 0.00

=   Total Postpetition Arrearage                                 $  _____ 3,882.60

**OTHER LOAN INFORMATION:**

    Date of the Loan            <u>September 20, 2006</u>

    Current Interest Rate       <u>4.625%</u>

Money paid to and held by the mortgagee but not applied to the loan <u>$59.44</u>; if held in the form of checks, balance of such checks <u>$0.00</u>, and identity of holder of the checks <u>n/a</u>.

**REQUIRED ATTACHMENTS TO MOTION:**

(a) In a Chapter 13 case, a postpetition payment history.

(b) In all cases, copies of documents which indicate movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the real estate mortgage should be attached. The mortgage should bear date stamps reflecting the recording date together with recording references reflecting the recordation of the mortgage with the appropriate county official. If the subject property is registered land, movant shall attach a copy of the registered land certificate or other documentation reflecting that the mortgage was memorialized as a lien on the registered land certificate.

This Exhibit and Worksheet was prepared by:

Respectfully Submitted,

/s/ Chris E. Manolis
Shapiro, Van Ess, Phillips & Barragate, LLP
Chris E. Manolis (OH-0076197)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (513) 396-8100
Fax: (847) 627-8805
Email: cmanolis@logs.com

# ADJUSTABLE RATE NOTE
## Monthly Treasury Average Index - Payment and Rate Caps

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

| September 20, 2006 | Centerville | Ohio |
|---|---|---|
| [Date] | [City] | [State] |

2001 Val Vista Court, Dayton, OH  45406

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **82,950.00**                (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **GreenPoint Mortgage Funding, Inc.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of           **3.000** %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of **November, 2006**          , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C) Interest Rate Limit

My interest rate will never be greater than           **12.000**%.

### (D) Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board entitled "Selected Interest Rates (h.15)" (the "Monthly Yields").

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (E) Calculation of Interest Rate Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **three and one-half** percentage points (    **3.500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the rounded amount will be my new interest rate until the next Interest Change Date.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **November 1, 2006** .
I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **October 1, 2036**             , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 1093, Branford, CT 06405-8093**

                                                                                                                                       or
at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **349.72** .
This amount may change.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first day of **November, 2007**           , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will be not more than 7.5% greater than the amount of my last monthly payment due before the Payment Change Date.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to 110% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

**(G) Required Full Payment**

On **11/01/2011** and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again.  I will also begin paying the Full Payment as my monthly payment on the final Payment Change Date.

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15**                   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be           **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Brenda Richmond              -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower


*[Sign Original Only]*

WITHOUT RECOURSE
PAY TO THE ORDER OF:

GreenPoint Mortgage Funding, Inc.

Thomas K. Mitchell
Vice President



# INTERIM INTEREST ADDENDUM TO
# ADJUSTABLE RATE NOTE

This Addendum is made this **20th** day of **September, 2006**, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") of the same date herewith, given by undersigned ("Borrower") to evidence Borrower's indebtedness to **GreenPoint Mortgage Funding, Inc.** its successors and assigns ("Lender") which indebtedness is secured by a Security Instrument and covering the property described in the Security Instrument and located at:

**2001 Val Vista Court, Dayton, OH  45406**

Notwithstanding anything to the contrary set forth in the Note, Rider and Security Instrument, Lender and Borrower hereby acknowledge and agree to the following.

2.    **INTEREST**
      (A)    **Interest Rate**
      Interest will be charged on unpaid principal until the full amount of Principal has been paid.  Until the first day of the calendar month that immediately precedes the first payment date set forth in Section 3(A) of the Note, I will pay interest at a yearly rate of **8.125** %.  Thereafter, I will pay interest at a yearly rate of **3.000%**, until the first Interest Change Date (as defined in Section 2(B) of the Note).

      The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

All other provisions of the Note, Rider and Security Instrument are unchanged by this Addendum and remain in full force and effect.

_____ (Borrower)        _____ (Borrower)
Brenda Richmond

_____ (Borrower)        _____ (Borrower)

_____ (Borrower)        _____ (Borrower)

_____ (Borrower)        _____ (Borrower)

# PREPAYMENT FEE ALLONGE

Loan Number: ▮▮▮▮▮▮

This Prepayment Fee Allonge ("Allonge") is made this **20th** day of **September, 2006**, and is incorporated into and intended to form a part of the note dated the same date as this Allonge (Note) and also amends and supplements the mortgage, deed of trust, security deed, or security instrument (the "Security Instrument") dated the same date as this Allonge and the Note. To the extent that the provisions of this Allonge are inconsistent with the provisions of the Note and/or the Security Instrument, the provisions of this Allonge shall prevail over and will supercede any inconsistent provisions of the Note and/or the Security Instrument.

The section of the Note entitled **Borrower's Right to Prepay** is amended by adding the following paragraph as the last paragraph of such section:

   If I make a full Prepayment within **3 years** of the date of this Note, I agree to pay the Note Holder a Prepayment fee. The Prepayment fee I will pay shall be an amount equal to one percent (1%) of the original principal amount of this Note. I will not be obligated to pay a Prepayment fee if I make a full Prepayment at any time after the **3rd Year** anniversary of the date of this Note. In no event will such a charge be made if it violates state or federal law.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Borrower)
Brenda Richmond

_____ (Borrower)

_____ (Borrower)

_____ (Borrower)

_____ (Borrower)

_____ (Borrower)

_____ (Borrower)

_____ (Borrower)

*[Sign Original Only]*

Prepayment Fee Allonge - (Ohio)
GreenPoint Mortgage Funding, Inc.                    Page 1 of 1                    H850000H 07/06

Return To:
**GreenPoint Mortgage Funding,**
**Inc.**
**981 Airway Court, Suite E**
**Santa Rosa, CA 95403-2049**



————————————————[Space Above This Line For Recording Data]————————————————

# MORTGAGE

MIN ███████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **September 20, 2006**                ,
together with all Riders to this document.
(B) "Borrower" is **Brenda   Richmond, An Unmarried Woman**

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee**
**under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is **GreenPoint Mortgage Funding, Inc.**

Lender is a **Corporation**
organized and existing under the laws of **the State of New York**
Lender's address is **100 Wood Hollow Drive, Novato, CA 94945**

**OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**          Form 3036  1/01

VMP®-6A(OH) (0405).01
Page 1 of 15
      VMP Mortgage Solutions, Inc. (800)521-7291

(E) "Note" means the promissory note signed by Borrower and dated **September 20, 2006**
The Note states that Borrower owes Lender **eighty-two thousand nine hundred fifty and
00/100**                                                                           Dollars
(U.S. $**82,950.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **October 1, 2036** .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [x] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |
| [ ] Occupancy Rider | [x] Interim Interest Rider | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

| **County** | of | **Montgomery** | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**See Schedule C Attached Hereto**

Parcel ID Number: **R72-16118-0026**                which currently has the address of
**2001 Val Vista Court**                                                             [Street]
**Dayton**                                    [City], Ohio **45406**            [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

VMP -6A(OH) (0405).01                        Page 3 of 15                        Form 3036   1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community

Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to

prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any



interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is


-6A(OH) (0405).01                              Page 7 of 15                              Form 3036   1/01

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source

 -6A(OH) (0405).01

Page 8 of 15

Form 3036   1/01

of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

 -6A(OH) (0405).01

Page 9 of 15

Form 3036  1/01

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.



-6A(OH) (0405).01                          Page 11 of 15                          Form 3036   1/01

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.



 -6A(OH) (0405).01                 Page 12 of 15                      Form 3036   1/01

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

 -6A(OH) (0405).01

Page 13 of 15

Form 3036   1/01

**24. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, **Montgomery**
County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                 **Brenda Richmond**        -Borrower

_____          _____ (Seal)
                                                            -Borrower

_____ (Seal)           _____ (Seal)
                -Borrower                                   -Borrower

_____ (Seal)           _____ (Seal)
                -Borrower                                   -Borrower

_____ (Seal)           _____ (Seal)
                -Borrower                                   -Borrower



**STATE OF OHIO,**                    *Montgomery* County ss:

This instrument was acknowledged before me this *20th* day of *September, 2006*      by
**Brenda Richmond** , *AN UNMARRIED WOMAN*

My Commission Expires: *5/4/08*

TANISHA M. BAYLESS, Notary Public
In and for the State of Ohio
My Commission Expires May 4, 2008

Notary Public

This instrument was prepared by
**GreenPoint Mortgage Funding**

# INTERIM INTEREST RIDER TO
# ADJUSTABLE RATE RIDER AND MORTGAGE, DEED OF TRUST OR DEED TO SECURE DEBT

This Rider is made this 20th day of September, 2006, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Rider (the "Rider") and the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument") of the same date herewith, given by undersigned ("Borrower") to evidence Borrower's indebtedness to **GreenPoint Mortgage Funding, Inc.** its successors and assigns ("Lender") which indebtedness is secured by a Security Instrument and covering the property described in the Security Instrument and located at:

**2001 Val Vista Court, Dayton, OH  45406**

Notwithstanding anything to the contrary set forth in the Note, Rider and Security Instrument, Lender and Borrower hereby acknowledge and agree to the following.

2. **INTEREST**
   (A)     **Interest Rate**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid.  Until the first day of the calendar month that immediately precedes the first payment date set forth in Section 3(A) of the Note, I will pay interest at a yearly rate of **8.125%**.  Thereafter, I will pay interest at a yearly rate of **3.000%**, until the first Interest Change Date (as defined in Section 2(B) of the Note).

   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

All other provisions of the Note, Rider and Security Instrument are unchanged by this Addendum and remain in full force and effect.

| | |
|---|---|
| _____ (Borrower) Brenda Richmond | _____ (Borrower) |
| _____ (Borrower) | _____ (Borrower) |
| _____ (Borrower) | _____ (Borrower) |
| _____ (Borrower) | _____ (Borrower) |

# ADJUSTABLE RATE RIDER
### Monthly Treasury Average Index - Payment and Rate Caps

THIS ADJUSTABLE RATE RIDER is made this 20th    day of September, 2006     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
GreenPoint Mortgage Funding, Inc.

("Lender") of the same date and covering the property described in the Security Instrument
and located at: 2001 Val Vista Court, Dayton, OH  45406

[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST
RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE
AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE. THE PRINCIPAL
AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for changes in the interest rate and the monthly payments, as follows:

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid principal until the full amount of Principal has been
paid. I will pay interest at a yearly rate of        3.000 %. The interest rate I will pay
may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of November, 2006        ,
and on that day every month thereafter. Each date on which my interest rate could change is

TRAR-OB (06/06) GreenPoint Mortgage Funding, Inc.

Page 1 of 6

called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(C) Interest Rate Limit**

My interest rate will never be greater than                          12.000 %.

**(D) Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board entitled "Selected Interest Rates (h.15)" (the "Monthly Yields").The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **three and one-half** percentage points ( **3.500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the rounded amount will be my new interest rate until the next Interest Change Date.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **November 1, 2006**       . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **October 1, 2036**          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 1093, Branford, CT 06405-8093**

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **349.72**                   .
This amount may change.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first day of **November, 2007**    , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater than the amount of my last monthly payment due before the Payment Change Date.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to 110% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

TRAR-OB (06/06)  GreenPoint Mortgage Funding, Inc.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

TRAR-OB (06/06) GreenPoint Mortgage Funding, Inc.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
Brenda Richmond          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

TRAR-OB (06/06)  GreenPoint Mortgage Funding, Inc.

Page 5 of 5

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 20th      day of **September, 2006**          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to **GreenPoint Mortgage
Funding, Inc.**

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at: **2001 Val Vista Court, Dayton, OH  45406**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

**MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01**

VMP-57R (0411)
Page 1 of 3
VMP Mortgage Solutions, Inc.
(800)521-7291

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
Brenda Richmond          -Borrower                               -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower


VMP-57R (0411)                  Page 3 of 3                  Form 3170 1/01

Stewart Title Guaranty Company

**SCHEDULE C**
**PROPERTY DESCRIPTION**

The land referred to in this Commitment is described as follows:

SITUATE IN THE CITY OF DAYTON, COUNTY OF MONTGOMERY, STATE OF OHIO AND BEING LOT
NUMBERED SEVENTY NINE THOUSAND SEVENTY THREE (79073) OF THE CONSECUTIVE NUMBERS
OF LOTS ON THE REVISED PLAT OF THE SAID CITY OF DAYTON, OHIO.

SUBJECT TO ALL EASEMENTS AND RESTRICTIONS OF RECORD.

PARCEL NUMBER: R72-16118-0026

COMMONLY KNOWN AS: 2001 VAL VISTA DAYTON, OHIO

**ALTA Commitment**
**Schedule C**

THE STATE OF OHIO ⎫
MONTGOMERY COUNTY ⎰ ss.


      I, WILLIS E. BLACKSHEAR, RECORDER, within and for the County and State aforesaid,
do hereby certify that the foregoing is a true and correct copy of the _mortgage_ _____
_____ recorded at _07-006086_ .
Witness my hand and seal of said office this _24th_ ____
day of _February_ , A. D., 20_07_ .


                 WILLIS E. BLACKSHEAR, RECORDER
                     Montgomery County, Ohio

By _____ ,
                           Deputy Recorder

2828.00 08/08/08 12:39:58
V/M -08-056890. 0002
Montgomery County
Willis E. Blackshear Recorder

After Recording, Please Return To:
Manley Deas Kochalski LLC
P.O. Box 165028
Columbus, Ohio 43216
File Number: ███████████

## ASSIGNMENT ███

"MERS", Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Greenpoint Mortgage Funding, Inc. ("Assignor"), whose address is P.O. Box 2026, Flint, MI  48501-2026, assigns to US Bank NA, as trustee of GPMFT 2007-AR1 ("Assignee"), whose address is c/o GMAC Mortgage Corporation, 1100 Virginia Drive, P.O. Box 8300, Fort Washington, Pennsylvania 19034, its interest in that mortgage dated September 20, 2006 executed and delivered by **Brenda Richmond, an unmarried woman** , which mortgage was filed January 23, 2007, recorded at Official Instrument Number 07-006086, Recorder's Office, Montgomery County, Ohio.

The property encumbered by such mortgage is described as follows: See Exhibit  A  for legal description.
Parcel No.  R72 16118 0026.
Property Address:  2001 Val Vista Court, Dayton, OH 45406

The Recorder is hereby requested to cross-reference this Assignment to the recording reference of the mortgage hereinbefore described.

In witness whereof, "MERS", Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Greenpoint Mortgage Funding, Inc. has executed this Assignment this  4th day of July, 2008.
                                                                                        August

"MERS", Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Greenpoint Mortgage Funding, Inc.

By _____
                    Signature

Print Name and Title                    **Jeffrey Stephan**
                                                 **Vice President**

STATE OF ____Pennsylvania )
                                                      ) SS
COUNTY OF ___Montgomery )

Before me, a Notary Public, personally appeared "MERS", Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Greenpoint Mortgage Funding, Inc. (the  Company ), acting through  Jeffrey Stephan , its Vice President , who acknowledged that he/she is authorized to sign this Assignment, that he/she signed the foregoing instrument on behalf of the Company by proper authority, and that the foregoing instrument is the act of the Company for the purposes stated in the instrument. In testimony whereof, I have hereunto subscribed my name and affixed my official seal on this  4th day of July, 2008.
                                       August

_____
Notary Public

Prepared by: Manley Deas Kochalski LLC, P. O. Box 165028, Columbus, OH 43216-5028
After Recording Return to: Manley Deas Kochalski LLC, P. O. Box 165028, Columbus, OH 43216-5028

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Susan Turner, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Nov. 9, 2011
Member, Pennsylvania Association of Notaries

Instrument Number: ████████████  Seq: 1

## EXHIBIT "A"

Legal Description:

Situated in the City of Dayton, County of Montgomery, State of Ohio and being lot numbered
seventy nine thousand seventy three (79073) of the consecutive numbers of lots on the revised
plat of the said city of Dayton, Ohio.

Subject to all easements and restrictions of record.

**Instrument Number:** ███████████ q: 2

$35.00 03/01/11 12:30:18
A/M -1-013389 0003
Montgomery County
Willis E. Blackshear Recorder



**ASSIGNMENT**

**US Bank NA, as Trustee of GPMFT 2007-AR1 ("Assignor")**, whose address is c/o GMAC Mortgage
Corporation, 1100 Virginia Drive, P.O. Box 8300, Fort Washington, Pennsylvania 19034, assigns to
**GMAC Mortgage, LLC ("Assignee")**, whose address is c/o GMAC Mortgage Corporation, 1100
Virginia Drive, P.O. Box 8300, Fort Washington, Pennsylvania 19034, its interest in that mortgage dated
September 20, 2006 executed and delivered by **Brenda Richmond, an unmarried woman**, which
mortgage was filed January 23, 2007, recorded at Official Instrument Number 07-006086, Recorder's
Office, Montgomery County, Ohio, together with the promissory note secured by such mortgage and all
sums of money due and to become due on such promissory note.

The property encumbered by such mortgage is described as follows:

See Exhibit "A" for legal description.

Parcel No.  R72 161180026.

Property Address:  2001 Val Vista Ct, Dayton, OH 45406

The Recorder is hereby requested to cross-reference this Assignment to the recording reference of the
mortgage hereinbefore described.

**THE BALANCE OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK
IN ORDER TO COMPLY WITH ORC 317.114**

**Instrument Number: 2011-00013389  Seq: 1**

**IMPORTANT NOTICE:**
**IN ORDER TO COMPLY WITH ORC 317.114, NO PORTION OF SIGNATURES**
**OR STAMPS SHOULD APPEAR OUTSIDE OF THE DESIGNATED PAGE**
**BORDERS.**

In witness whereof, US Bank NA, as Trustee of GPMFT 2007-AR1 has executed this Assignment
this 22 day of FEBRUARY, 2010.
2011

US Bank NA, as Trustee of GPMFT 2007-AR1

By _____
Signature
Christiana Nitkiewicz Assistant Secretary
Print Name and Title

STATE OF Pennsylvania )
) SS
COUNTY OF Montgomery )

Before me, a Notary Public, personally appeared US Bank NA, as Trustee of GPMFT 2007-AR1
(the "Company"), acting through ____Christiana Nitkiewicz____, its Assistant Secretary
_____, who acknowledged that he/she is authorized to sign this Assignment,
that he/she signed the foregoing instrument on behalf of the Company by proper authority, and that
the foregoing instrument is the act of the Company for the purposes stated in the instrument. In
testimony whereof, I have hereunto subscribed my name and affixed my official seal on this 22
day of February, 2010. 2011

_____ (SEAL)
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Lynch, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Nov. 3, 2014

Prepared by:      Charles R. Janes, Attorney at Law, KBA # 0013138
Manley Deas Kochalski LLC, P. O. Box 165028, Columbus, OH 43216-5028
After Recording Return to: Manley Deas Kochalski LLC, P. O. Box 165028, Columbus, OH
43216-5028

Instrument Number: ███████   Seq: 2

**EXHIBIT "A"**

Legal Description:

Situated in the City of Dayton, County of Montgomery and State of Ohio

And being Lot Numbered Seventy Nine Thousand Seventy Three (79073) of the consecutive Numbers of
Lots on the revised plat of the City of Dayton, Ohio.

**Instrument Number: 2011-        Seq: 3**

Type: Mortgages
Kind: ASSIGNMENT OF MORTGAGE
Recorded: 3/19/2018 12:56:50 PM
Fee Amt: $28.00 • Page 1 of 2
Montgomery County, OH
Willis E. Blackshear Recorder

Recording Requested By: OCWEN LOAN SERVICING, LLC

When Recorded Return To: OCWEN LOAN SERVICING, LLC 1795 INTERNATIONAL WAY, IDAHO
FALLS, ID   83402

## CORPORATE ASSIGNMENT OF MORTGAGE

Montgomery, Ohio
**SELLER'S SERVICING**          "RICHMOND"
**SELLER'S LENDER ID#:   DW**
**OLD SERVICING #:**

Date of Assignment: March 6th, 2018

Assignor: GMAC MORTGAGE, LLC BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC at
1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL 33409

Assignee: U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR GREENPOINT MORTGAGE
FUNDING TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR1 at C/O OCWEN
LOAN SERVICING, LLC, 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL 33409

Executed By: BRENDA RICHMOND, AN UNMARRIED WOMAN To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR GREENPOINT MORTGAGE
FUNDING, INC., ITS SUCCESSORS AND/OR ASSIGNS

Date of Mortgage: 09/20/2006 Recorded: 01/23/2007 as Instrument No.: 07-006086 In the County of
Montgomery, State of Ohio.

Property Address: 2001 VAL VISTA COURT, DAYTON, OH 45406

Legal:   SITUATE IN THE CITY OF DAYTON, COUNTY OF MONTGOMERY, STATE OF OHIO AND
BEING LOT NUMBERED SEVENTY-NINE THOUSAND SEVENTY-THREE (79073) OF THE
CONSECUTIVE NUMBERS OF LOTS ON THE REVISED PLAT OF THE SAID CITY OF DAYTON,
OHIO. SUBJECT TO ALL EASEMENTS AND RESTRICTIONS OF RECORD.

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $82,950.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the
Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage.

*Manley Deas*
*P.O. Box 165028*
*Columbus, OH 43272*

Instrument Number: 2018-00015013  Seq: 1

Page 1 of 2

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed the foregoing instrument.

GMAC MORTGAGE, LLC BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC POA: 09/30/2014 as Instrument No.: 201400051877
On __MAR 1 2 2018__

By: _____
Name: Jamell Strachan,
Title: Servicing Operations Specialist

STATE OF FLORIDA
COUNTY OF PALM BEACH

On __MAR 1 2 2018__, before me, ____Zorona Anderson____, a Notary Public in and for PALM BEACH in the State of FLORIDA, personally appeared Jamell Strachan, Servicing Operations Specialist, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Zorona Anderson
Notary Expires: 5 / 25 / 2020

Notary Public State of Florida
Zorona Anderson
My Commission FF 996040
Expires 06/25/2020

(This area for notarial seal)

Prepared By: Roy Canlas, OCWEN LOAN SERVICING, LLC 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402 800-746-2936

Kind: DEED
Recorded: 9/23/2016 3:46:32 PM
Fee Amt: $28.00  Page 1 of 2
Montgomery County, OH
Willis E. Blackshear Recorder

File# 2016-00052603

TRANSFER
SEPTEMBER 23, 2016
KARL L. KEITH, COUNTY AUDITOR
Conv/Tran #: 15538          $.00

Recording requested by: Jeffery G. Richmond

Space above reserved for use by Recorder's Office

When recorded, mail to:

Document prepared by:

Name: Jeffery G. Richmond

Name  Jacqulyn L Richmond

Address: 115 Horace Street

Address 620 Redwood Avenue

City/State/Zip: Dayton, Ohio 45402

City/State/Zip Dayton, Ohio 45405

Property Tax Parcel/Account Number:

R72 16118 0026

# Quitclaim Deed

This Quitclaim Deed is made on ___September 22, 2016_____ , between
Richmond's Enterprise Inc
_____ , Grantor, of 115 Horace Street
_____ , City of Dayton _____ , State of Ohio _____ ,
and Jeffery G. Richmond
_____ , Grantee, of 115 Horace Street
_____ , City of Dayton _____ , State of Ohio _____ .

For valuable consideration, the Grantor hereby quitclaims and transfers all right, title, and interest held by
the Grantor in the following described real estate and improvements to the Grantee, and his or her heirs
and assigns, to have and hold forever, located at 2001 Val Vista Court
_____ , City of Dayton _____ , State of Ohio _____ .

Situated in the City of Dayton, County of Montgomery, State of Ohio and being lot numbered seventy nine thousand
seventy three (79073) of the consecutive numbers of lots on the revised plat of said city of Dayton, Ohio.

Subject ao all easements and restrictions of record.

Subject to all easements, rights of way, protective covenants, and mineral reservations of record, if any.
Taxes for the tax year of 2016 _____ shall be prorated between the Grantor and Grantee as of the date of
recording of this deed.

★NOVA K311 Quitclaim Deed Pg.1 (08-09)

Dated: _____

_____
Signature of Grantor

Jeffery G. Richmond dba Richmond's Enterprise, Inc.
_____
Name of Grantor

_____          _____
Signature of Witness #1                              Printed Name of Witness #1

_____          _____
Signature of Witness #2                              Printed Name of Witness #2

State of ___Ohio_____ County of ___Montgomery_____

On ___9 / 25 / 16_____ , the Grantor, Jeffery G. Richmond dba Richmond's Enterprise, Inc.
personally came before me and, being duly sworn, did state and prove that he/she is the person described
in the above document and that he/she signed the above document in my presence.

_____
Notary Signature

Notary Public,
In and for the County of ___Montgomery___ State of ___Ohi___
My commission expires: ___Nov. 25, 2017___

AARON MERKLE, Notary Public
In and for the State of Ohio
My Commission Expires Nov. 25, 2017

Send all tax statements to Grantee.

Quit Claim Deed Pg. 2 (08-09)

Exhibit 1

| Name: | Jeffery G. Richmond | | | | | | |
|---|---|---|---|---|---|---|---|
| BK Case Number: | 17-bk-32838 | | | | | | |
| Filing Date: | 9/7/2017 | | | | | | |
| Post First Due: | 10/1/2017 | | | Completed By: | kmpraffu | | |
| Post-Petition Due | Date Received | Amount Received | Amount Applied | Suspense Application | Suspense Balance | Comments | |
| 10/1/2017 | 9/11/2017 | $ 646.08 | $ 646.08 | $ - | $ - | Short Payment Accepted | |
| 11/1/2017 | 10/13/2017 | $ 646.08 | $ 646.08 | $ - | $ - | Short Payment Accepted | |

| Name: | 0 | | | | | | |
|---|---|---|---|---|---|---|---|
| BK Case Number: | 0 | | | | | | |
| Filing Date: | 1/0/1900 | | | | | | |
| Completed by: | 01/00/00 | | | | | | |
| Due Date | Total Payment | Principal | Interest | Escrow | | Optional Products | NOPC Filed Date |
| 12/1/2017 | $ 647.10 | $ 124.73 | $ 356.56 | $ 165.81 | | $ - | |
| 1/1/2018 | $ 647.10 | $ 125.21 | $ 356.08 | $ 165.81 | | $ - | |
| 2/1/2018 | $ 647.10 | $ 125.69 | $ 355.60 | $ 165.81 | | $ - | |
| 3/1/2018 | $ 647.10 | $ 126.18 | $ 355.11 | $ 165.81 | | $ - | |
| 4/1/2018 | $ 647.10 | $ 126.67 | $ 354.62 | $ 165.81 | | $ - | |
| 5/1/2018 | $ 647.10 | $ 127.15 | $ 354.14 | $ 165.81 | | $ - | |
| Total Due | $ 3,882.60 | $ 755.63 | $ 2,132.11 | $ 994.86 | | $ - | |